**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

JASON SMITH on behalf of himself and all other Similarly situated,

Plaintiffs,

v. CIVIL ACTION NO. 3:13-5211

RES-CARE, INC., a Kentucky corporation,

Defendant.

**ORDER**

Pending before the Court is a motion (ECF No. 16) by Defendant Res-Care, Inc. ("Res-Care"), to dismiss Plaintiff's Complaint. For the reasons explained below, the Court **DENIES** Defendant's motion to dismiss.

**I. Statement of Facts**

Plaintiff Jason Smith filed the pending Complaint, ECF No. 1, seeking damages based on Defendant's use of a consumer report[1] about Plaintiff to make a decision not to hire Plaintiff for employment.

---

[1] The Fair Credit Reporting Act ("FCRA") defines "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

Res-Care is a for-profit corporation that provides services to individuals who have intellectual or developmental disabilities.. Plaintiff applied for employment with a Res-Care facility located in Huntington, West Virginia, in May 2008. Compl. ¶ 8. Plaintiff signed an authorization for Res-Care to "conduct an investigation of state, federal and local law enforcement records to confirm statements made in his application." Compl. ¶ 9. He alleges that the authorization "was not clear, conspicuous or stand-alone, and did not authorize Res-Care to procure [his] consumer report for employment purposes." Compl. ¶ 10.

After Plaintiff applied for employment, Res-Care ordered a consumer report about him; the report Res-Care received allegedly "contained[ed] criminal background information, which grossly and inaccurately maligned Smith by reporting that he had passed bad checks." Compl. ¶ 12. Res-Care thereafter declined to hire Plaintiff. Compl. ¶ 13. Plaintiff counters that, in fact, he has no criminal history. Compl. ¶ 12.

Plaintiff thereafter filed the instant class action complaint, bringing five counts against Defendant pursuant to the Fair Credit Reporting Act ("FCRA"),[2] 15 U.S.C. § 1681 et seq.:

Count 1: Willful failure to provide a clear, conspicuous and stand-alone disclosure that a consumer report may be obtained for employment purposes

Count 2: Willful failure to obtain proper authorization to procure a consumer report for employment purposes

Count 3: Willful failure to provide a copy of the consumer report before taking an adverse action based in whole or in part on the consumer report

Count 4: Willful failure to provide a copy of the summary of rights required by the Act before taking an adverse action based in whole or in part on the report

[2] The FCRA has the purpose of ensuring that consumer information procedures are "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

Plaintiff seeks statutory and punitive damages, as well as attorney fees and costs.[3] The Complaint also makes representations about Plaintiff's ability to sufficiently represent the interests of the putative class, which is comprised of "[a]ll employees or prospective employees of Res-Care, about whom Res-Care procured a consumer report for employment purposes without proper authorization during the Class Period." ¶ 21.

Defendant subsequently filed the pending motion to dismiss,[4] arguing that because Defendant made an Offer of Judgment to Plaintiff pursuant to Federal Rule of Civil Procedure 68 which fully satisfies the relief sought, Plaintiff's claims are moot. Furthermore, Defendant argues that because no motion has yet been made for class certification, Plaintiff has no interest in representing the putative class. Because Plaintiff's claims are moot, Defendant argues, this Court

---

[3] Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
15 U.S.C. § 1681n (a).

[4] Plaintiff argues that Defendant's motion to dismiss—filed on July 1, 2013—is untimely because the deadline for filing Rule 12(b) motions was May 23, 2013. ECF No. 11. Defendant responds that its motion is not untimely because the Offer of Judgment did not expire until after the deadline, and regardless, subject matter jurisdiction can be questioned at any time. Because the sufficiency of a case's subject matter jurisdiction can be raised at any time, the Court finds it appropriate to consider the motion to dismiss on the merits—because it goes to the issue of subject matter jurisdiction—although it was filed after the deadline. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative even at the highest level").

lacks subject matter jurisdiction over the case, mandating dismissal under Rule 12(b)(1). Plaintiff filed a response in opposition, and Defendant filed a reply. The motion to dismiss is now ripe for resolution.

In Section II, the Court explains the standard for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction, and how subject matter jurisdiction is affected by the case-or-controversy requirement. In Section III, the Court analyzes Rule 68 and standards for offers of judgment, and then applies those standards to the case at hand.

## II. Subject Matter Jurisdiction and the Case-or-Controversy Requirement

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) raises the question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. One reason a federal court may lack subject matter jurisdiction—and therefore one ground for dismissal under Rule 12(b)(1)—is if the matter at hand is not actually a "case" or "controversy." Under Article III, § 2, of the Constitution, federal courts only have subject matter jurisdiction over "cases" and "controversies." This is commonly called the case-or-controversy requirement. As recently described by the United States Supreme Court in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), "[t]his requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." 133 S. Ct. at 1528. Therefore, the plaintiff must have "a legally cognizable interest . . . in the outcome of the action." *Id.* (citing *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011) (quotation omitted)). A live case or controversy must exist not only at the

outset of the litigation, but at every point thereafter. *Id.* (citation omitted). The court must dismiss the case as moot if the plaintiff's "personal stake in the outcome of the lawsuit" dissipates. *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990) (internal quotation marks omitted)).

## III. Discussion

The issue presented by Defendant's motion to dismiss must be broken down into a two-part inquiry. First, the Court must decide if Defendant's Offer of Judgment pursuant to Rule 68 fully satisfies Plaintiff's request for relief. If the answer to this question is "yes," then the Court would turn to the second question, which is whether the full satisfaction of Plaintiff's request for relief—which occurs before Plaintiff files a motion for class certification—means that a justiciable case no longer exists, and that therefore the case must be dismissed. Because the Court answers the first question in the negative, it need not reach the second question.

### A. Rule 68 and "Fully Satisfaction" of a Plaintiff's Claims

Rule 68 governs the effect of offers of settlement, and the deadlines for replying to such offers, in pertinent part as follows:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> (b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

Fed. R. Civ. P. 68.

In *Genesis Healthcare*, the Supreme Court acknowledged that "the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot." 133 S. Ct. at 1528 (footnote omitted). The Supreme Court determined, however, that "we do not reach this question, or resolve the split, because the issue is not properly before us." *Id.* at 1528-29. In that case, the respondent had instituted a collective action pursuant to the Fair Labor Standards Act of 1938 seeking statutory damages, and the petitioners thereafter made an offer of judgment. The respondent conceded to the district court and court of appeals that an offer of judgment providing full relief moots a plaintiff's claim, and she did not argue otherwise in her opposition brief to the petition for certiorari. *Id.* at 1529. Therefore, the respondent was deemed to have waived argument about full satisfaction, and the Supreme Court "assume[d], without deciding, that petitioners' Rule 68 offer mooted respondent's individual claim." *Id.* at 1529 (citing *Baldwin v. Reese,* 541 U.S. 27, 34 (2004)).

Therefore, the *Genesis Healthcare* opinion instead focused more attention on the issue of whether—in light of full satisfaction of the respondent's request for relief—the case nonetheless remained justiciable because of the complaint's collective action allegations. In the end, the Supreme Court concluded that "[a] straightforward application of well-settled mootness principles compels our answer. In the absence of any claimant's opting in, respondent's suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action." *Id.* at 1529.

While *Genesis Healthcare* avoided discussion of what constitutes "full satisfaction" of a plaintiff's claim, the Fourth Circuit directly addressed this issue in *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012), *as amended* (Feb. 1, 2012). In that case, plaintiff Margaret

Warren had filed a complaint seeking damages for violations of the Fair Debt Collection Practices Act, which allows a plaintiff to collect actual damages, statutory damages, costs, and reasonable attorney's fees. The Act does not impose a cap on the actual damages a plaintiff can recover, and Warren accordingly sought an unspecified amount of actual damages. The defendants made an offer of judgment, which included an actual damages award of $250 or "an amount determined by the Court upon Plaintiff's submission of affidavits or other evidence of actual damage." Warren did not accept this offer. The defendants thereafter moved for dismissal, arguing that based on the facts of the case, Warren's actual damages do not exceed $250. Because the offer otherwise met the statutory maximum and provided for fees and costs, the defendants argued that the offer provided full relief, and therefore mooted Warren's claim. In rejecting this argument, the Fourth Circuit noted that:

> [T]he defendants can point to no evidentiary record from which any court could determine whether Warren could satisfy this burden. The district court held no hearing to resolve the jurisdictional issue nor has any discovery been taken as to the amount of Warren's actual damages. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (holding that "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts," and "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery").
>
> . . . .
>
> . . . [A]t this stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district court, we simply cannot hold that Warren could not possibly recover more than $250 if her case proceeded to a jury trial.

*Warren*, 676 F.3d at 371-72.[5]

**B. Application**

On May 10, 2013, Defendant made an Offer of Judgment to Plaintiff pursuant to Rule 68 in the amount of $25,000. Defendant represented that "[t]his amount shall by inclusive of all costs of this action (including all other costs, fees, amounts, and other relief) and all actual attorneys' fees." Offer of Judgment, Ex. A, ECF No. 17-1. Plaintiff did not respond to the offer.

Defendant argues that the Offer of Judgment fully satisfies Plaintiff's request for relief, therefore mooting Plaintiff's claim. This Court, however, disagrees with Defendant, and finds that Defendant's Offer of Judgment does not fully satisfy Plaintiff's request for relief. In *Genesis Healthcare*, the Supreme Court explicitly avoided discussion of what constitutes a complete offer of relief or the effect such an offer has, and instead focused on the issue of whether the collective action allegations sustained a live controversy. Therefore, *Genesis Healthcare* does not disrupt the Fourth Circuit's reasoning in *Warren* that, if a plaintiff seeks uncapped and unspecified damages, an unaccepted offer of judgment cannot be said to provide full relief. *See also Velasquez v. Digital Page, Inc.*, CV 11-3892, 2013 WL 3376903, at *2 (E.D.N.Y. July 8, 2013) (distinguishing the plaintiff in *Genesis Health* from plaintiffs who "not only rejected the

[5] The defendants in that case offered actual damages of $250 or an amount of actual damages that would be determined later by the court. Because the offer of a court-determined amount of actual damages was not unequivocal, that alternative award could not moot the plaintiff's claim for relief. *See Warren*, 676 F.3d at 372-73. The Offer of Judgment in the instant case does not involve alternative offers of relief.

offers, but . . . also disputed their sufficiency").[6] In *Warren*, the plaintiff sought, *inter alia*, an unspecified amount of actual damages, and the statute at issue did not cap those damages. Similarly, Plaintiff's request for relief here includes a request for punitive relief of an unspecified amount, and FCRA does not cap the amount of punitive damages he can receive.

Defendant counters that any award of punitive damages Plaintiff receives must adhere to constitutional limits as prescribed in case law. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996). As part of this, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. Because the maximum amount of actual damages under the FCRA is $1,000, Defendant argues that the maximum amount of punitive damages Plaintiff would receive using a single-digit ratio is $9,000. Furthermore, according to Defendant, the allegations in this case do not support such a large award. ECF No. 17 at 5. To Defendant, the $25,000 offer of judgment exceeds the amount of statutory damages, realistic punitive damages, fees, and costs that Plaintiff is entitled to.

In support of this line of reasoning, Defendant points to *Sanchez v. Verified Pers., Inc.*, 11-2548-STA-CGC, 2012 WL 1856477 (W.D. Tenn. May 21, 2012). In that FCRA case, the defendant made an offer of judgment for $25,000, and the court held that the offer of judgment fully satisfied the plaintiff's request for relief:

> Damages as prayed for in the Amended Complaint are for actual damages "of not less than $100 and not more than $1,000," which is the amount prescribed by the FCRA. Although the FCRA also provides "such amount of punitive damages as

[6] The district court further noted that "the Supreme Court's specific assertion in *Genesis* that it was not deciding the broader issue of whether a rejected Rule 68 offer would always render a plaintiff's individual claim moot also renders that case non-dispositive." 2013 WL 3376903, at *2.

> the court may allow," and Plaintiff has requested punitive damages against Verified for its allegedly willful conduct, the Court finds that this amount would likely not exceed $10,000 given the 10 to 1 ratio of punitive to compensatory damages approved by the Supreme Court. Therefore, the likely maximum amount of damages Plaintiff could hope to collect would be $11,000, leaving $14,000 leftover for attorney's fees. Although Plaintiff's attorney's fees could be in excess of this amount, the Offer also provides an escape valve: "[r]easonable costs and attorneys' fees are to be agreed upon by the parties, or, if the parties are unable to agree, to be determined by the Court on application by Plaintiff's counsel." Accordingly, the Court finds that the Offer fully satisfies Plaintiff's possible recovery in this lawsuit, and allowing Plaintiff's claim to continue would needlessly amass attorney's fees for Plaintiff's counsel.

2012 WL 1856477, at *5 (footnotes omitted).

Although the Court cannot ignore the factual similarity between *Sanchez* and the present case, this is not sufficient to dictate a similar outcome. The district court in *Sanchez* emphasized the importance of following its Circuit's precedent, 2012 WL 1856477, at *4, and that same concern guides this Court. Therefore, in light of the Fourth Circuit's opinion in *Warren*, the Defendant's Offer of Settlement does not provide full relief. Although it may be unlikely that Plaintiff will recover an amount of punitive damages in excess of $9,000, such an award is possible,[7] and Plaintiff need not demonstrate the likeliness of the amount of any punitive award at this point. Must like the situation in *Warren*, there has been no evidentiary hearing or judicial fact-finding regarding any potential amount of punitive damages, and the Court will not engage in such fact-finding now. Furthermore, the case is still in the early stages of discovery, and so a determination at this time would be inappropriate.

The Court finds that Defendant's Offer of Judgment did not provide full relief of Plaintiff's claims, and therefore Plaintiff's claims have not been mooted. That is sufficient

---

[7] *See, e.g., Saunders v. Branch Banking And Trust Co. Of VA*, 526 F.3d 142 (4th Cir. 2008) (finding that award of $80,000 in punitive damages in FCRA case, where actual damages were $1,000, was not "grossly excessive or arbitrary.").

grounds for ruling that Defendant's motion to dismiss is **DENIED**. Because Plaintiff's claims are not mooted, it is not necessary for the Court to reach the issue of whether full satisfaction of Plaintiff's request for relief—before Plaintiff files a motion for class certification—means that a justiciable case no longer exists.

## IV. Conclusion

For the reasons explained above, the Court **DENIES** Defendant's motion to dismiss (ECF No. 16).

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: August 28, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE