IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON SMITH on behalf of himself and
all other Similarly situated,

                    Plaintiffs,

v.                                          CIVIL ACTION NO.   3:13-5211

RES-CARE, INC., a Kentucky corporation,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Currently before the Court for preliminary approval is a settlement (the "Settlement") of this class action (the "Civil Action"), asserting claims for alleged violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a-1681x, with respect to ResCare, Inc. ("ResCare" or "Defendant"). ECF No. 54. The terms of the Settlement are set out in a Stipulation of Settlement dated November 21, 2014 (the "Stipulation"), which has been executed by Plaintiff Jason Smith ("Smith") and Defendant (collectively with Plaintiff, the "Parties"). For the reasons stated herein, the Court **GRANTS** Plaintiff's motion to preliminarily approve the Settlement.

**I. Background**

On March 15, 2013, Plaintiff Jason Smith commenced this Civil Action against ResCare, Inc., on behalf of himself and all other similarly situated individuals, alleging certain violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681a-1681x (Doc. 1). On November 5, 2013, Smith voluntarily dismissed without prejudice Counts I and II of his Complaint, which alleged violations of 15 U.S.C. § 1681b(b)(2)(A) (Doc. 25). The class claims encompassed

applicants nationwide who sought employment with ResCare and were the subject of a consumer report obtained by ResCare for employment purposes. Specifically, Smith alleged that ResCare willfully violated the FCRA by failing to provide job applicants pre-adverse action notice along with a copy of the consumer report and a Summary or Rights to applicants *before* taking adverse action based in whole or in part on information contained in the report. 15 U.S.C. § 1681b(b)(3)(A).

Shortly after the filing of the Civil Action, ResCare served an offer of judgment, which Smith rejected. Thereafter, the Settling Parties litigated a Rule 12(b) motion, which the court denied on August 28, 2013. After reviewing documents produced and deposition transcripts from prior litigation against ResCare involving FCRA claims, the Settling Parties agreed to mediation with the Honorable C. Cleveland Gambill (Ret.) in Louisville, Kentucky on March 18, 2014. Although initially unsuccessful, the parties continued settlement discussions with the help of Judge Gambill and ultimately reached the agreement discussed herein.

Smith believes that the claims asserted in the Civil Action have merit and that if the case did not settle he would prevail at trial. ResCare, on the other hand, believes that if the case proceeded to trial, ResCare would prevail. Regardless, it is understood that if the case proceeded to trial and Smith failed to prove that ResCare willfully violated the FCRA, that Smith's claims would fail, and he and any potential class members would not be entitled to any monetary amount. Conversely, if Smith prevailed at trial, then he and any potential class members would be entitled to statutory damages between $100.00 and $1,000.00, plus attorney fees and other relief under the FCRA. *See* 15 U.S.C. § 1681n.

## II. The Proposed Settlement

### A. Settlement Terms

This proposed class action settlement requires ResCare to pay $840,000. This figure is an "all-in" payment that will cover all settlement expenses – payment to class members, a proposed $7,500 service award to Mr. Smith, attorneys' fees and costs, and costs of settlement administration and notice.

1. *Certification of a Fed. R. Civ. P. 23(b)(3) Settlement Class*

For settlement purposes, Plaintiff seeks preliminary certification of a Fed. R. Civ. P. 23(b)(3) class, defined as follows:

> All natural persons residing in the United States who applied for employment with ResCare during the Class Period and about whom ResCare procured a Consumer Report and as a result of ResCare procuring a Consumer Report, were denied employment based in whole or in part on the contents of the Consumer Report and to whom either a copy of the Consumer Report or a copy of the Summary of Rights was not provided.

2. *Class Representative and Class Counsel*

For settlement purposes, Plaintiff requests to be appointed as Class Representative on behalf of the Class Members. Matthew A. Dooley and Anthony R. Pecora of O'Toole McLaughlin Dooley & Pecora Co., LPA, Leonard A. Bennett of Consumer Litigation Associates, P.C., and John W. Barrett of Bailey & Glasser LLP, request appointment as counsel for the Class Members.

3. *Settlement Administrator*

Class Counsel will hire a third-party class action settlement administrator, Epperly Re:Solutions (the "Settlement Administrator"), to oversee the administration of the settlement and the notification to Class Members. All costs and expenses for the Settlement Administrator are to

be paid from the Settlement Funds. The Settlement Administrator will be responsible for mailing the approved class action notices and class forms to the Class Members. If this Class Action Settlement receives final approval, the Class Administrator will mail the settlement checks to the Class Members who made a valid claim.

   4. *Notice*

The Settlement Administrator will research and update the Class Members' mailing addresses. After updating addresses in the manner described in the Settlement Agreement, the Settlement Administrator will send, via First Class U.S. mail, the Court-approved written notices of the settlement to each Class Member at his or her last known valid address. If any notice is returned with a new address, the notices will be re-mailed by the Settlement Administrator to the new address. Additionally, Class Counsel will establish a Settlement Website with the assistance of the Settlement Administrator containing relevant information such as the Stipulation of Settlement, the Notice, Claim Form, Preliminary Approval Order, and contact information for the Settlement Administrator.

   5. *Settlement Payment*

ResCare will deposit $840,000.00 (the "Settlement Funds") in an account established pursuant to the Stipulation of Settlement within ten (10) business days of the Court's preliminary approval of the Settlement, but in no event before January 5, 2015. This amount will be inclusive of attorneys' fees and costs, any Service Award, payments to Class Members, and all costs to administer the Settlement. Class Counsel may seek approval of fees and expenses as may be awarded by the Court up to 33% of the Settlement Funds. Smith will also seek a service award in the amount of $7,500.00.

ResCare estimates that the class includes between 5,000 and 10,000 Class Members. Each Class Member will receive a pro rata sum calculated after a deduction from the Settlement Funds has been made for the payment of attorney fees and the cost of notice and administration of the settlement.

6. *Narrow Release*

The Settlement includes a narrowly-tailored release from Class Members limited to the claims and issues in this case. Class Members who have not opted out will release Defendant only from claims arising under the FCRA or similar state laws. Class Members have agreed to this release in exchange for the cash payments that they will receive under the Settlement, which are intended to compensate them for any possible harm that they might have alleged in this case had it proceeded to trial.

7. *Uncashed or Expired Settlement Checks*

Settlement Checks that are returned, undeliverable, or remain uncashed for sixty (60) days from the date upon which they were mailed to Class Members will have no legal or monetary effect. After expiration of the sixty-day period after settlement checks are mailed to Class Members, any sums represented by uncashed settlement checks will revert to the Settlement Funds account to be distributed in accordance with the Stipulation of Settlement to the designated *cy pres* beneficiaries.

8. *Exclusions and Objections*

Any Class Member who desires to be excluded from the class must send a written request for exclusion to the Settlement Administrator, postmarked no later than the date set by the Court to object to the Settlement and provided in the Class Notice. The Settlement Administrator will

provide a list of the names of each Class Member who submitted a timely exclusion to counsel for Defendant and Class Counsel.

### III. The Settlement Merits Preliminary Approval

To preliminarily approve a settlement in a class action lawsuit, before directing that members of the class be given notice and an opportunity to be heard in a formal fairness hearing, the Court should be satisfied that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Samuel v. Equicredit Corp.,* 2002 U.S. Dist. LEXIS 8234, at *1 (E.D. Pa. 2002) (*citing* Manual of Complex Litigation § 30.44 (1985)).

Consideration of all of these factors indicates that the proposed settlement merits preliminary approval. The Court preliminarily finds that: (a) the proposed Settlement resulted from arm's-length negotiations; (b) the Stipulation of Settlement was executed only after Class Counsel had researched and investigated multiple legal and factual issues pertaining to the Named Plaintiff's and Class Members' claims; (c) there is a genuine controversy between the Parties regarding Defendant's compliance with the requirements of the FCRA; (d) the Settlement appears on its face to be fair, reasonable, and adequate, and (e) the Settlement is sufficiently fair, reasonable, and adequate to warrant sending Notice of the Action and the Settlement to the Preliminary Settlement Class.

### IV. Preliminary Certification of the Class is Appropriate

Although the parties have agreed to the certification of the classes for settlement purposes, the Court nonetheless must find the proposed classes are appropriate for class certification. *See*

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification requires the named plaintiff to meet all of the prerequisites of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one of the subsections of Rule 23(b). *See Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that common issues predominate over individual ones and that a class action be superior to other available methods of adjudication. Consideration of these factors, as discussed below, supports certification of the proposed settlement classes.

### A. The Proposed Class Satisfies the Elements of Rule 23(a).

1. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). However, where the class numbers twenty-five or more, joinder is usually impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (eighteen class members sufficient); *cf. Kennedy v. Va. Polytechnic Inst. & State Univ.*, No. 7-08-cv-00579, 2010 WL 3743642, at *3 (W.D. Va. Sept. 23, 2010) (noting "it is exceedingly rare to certify classes with less than 25 members").

Inasmuch as there are approximately 10,000 class members, the numerosity requirement is easily met here. Joinder of this many individuals is neither practicable nor even possible. *See, e.g.*,

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

    2. *Commonality*

Rule 23(a)(2) requires that the court find that "there are questions of law or fact common to the class." "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Commc'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157). And the common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The standard is a liberal one that cannot be defeated by the mere existence of some factual variances among class members. *Jefferys*, 212 F.R.D. at 322; *Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 557 (D. Md. 2006) (Factual differences among class members will not preclude certification "if the class members share the same legal theory").

Here, Class Members share the same questions of law and fact. Class Members are alleged to be victims of policies and procedures whereby ResCare, in violation of the FCRA, did not give lawful notice when denying employment based in whole or in part on a consumer report. Specifically, Smith alleged that ResCare did not provide applicants with a copy of their consumer report and a written description of their FCRA rights *before* taking adverse action based in whole or in part on the applicants' consumer report. The theories of liability as to all Class Members,

therefore, arise from the same practices and present basic questions that are common to all members of the Settlement Class.

    3. *Typicality*

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "Nevertheless, the class representatives and the class members need not have identical factual and legal claims in all respects. The proposed class satisfies the typicality requirement if the class representatives assert claims that fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys*, 212 F.R.D. at 322. Commonality and typicality tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 131 S. Ct. at 2551 n.5.

Here, Smith's claims arise from ResCare's practices concerning the use of consumer reports for employment purposes. As discussed above, Smith's and the Class Members' claims rest on the same legal and factual issues. Thus, in seeking to prove his claims, Smith will necessarily advance the claims of the Class. This is the hallmark of typicality. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing Fed. R. Civ. P. 23(a)(3)).

4. *Adequacy of Representation*

"Finally, under Rule 23(a)(4), the class representatives must adequately represent the interest of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. "Basic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Fisher*, 217 F.R.D. at 212 (citing *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998).

The adequacy of representation requirement is met here. Smith understands and has accepted the obligations of a class representative, has adequately represented the interests of the putative class. He also retained experienced counsel who has handled numerous FCRA class actions, typically as lead or co-lead counsel. *Soutter v. Equifax Info. Servs., LLC*, No. 3:10-cv-107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011), *rev'd on other grounds*, 498 F. App'x 260 (4th Cir. 2012) (stating "the Court finds that Soutter's Counsel [Leonard A. Bennett] is qualified, experienced, and able to conduct this litigation. *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-cv-423, 2008 U.S. Dist. LEXIS 103534, at *11 (S.D.W. Va. Dec. 19, 2008) (recognizing that Plaintiff's counsel, Bailey & Glasser, particularly John W. Barrett and Jonathan R. Marshall, are "skilled and experienced in class action litigation, and have served as class counsel in several cases[.]").

Smith has no antagonistic or conflicting interests with the Class Members. Smith is a member of the Class, and both he and the Class seek statutory and punitive damages for ResCare's allegedly unlawful actions. Considering that the claims are identical, there is no potential for conflicting interests to arise between Smith and the Class Members.

**B. The Proposed Class Satisfies the Elements of Rule 23(b)(3)**

1. *Predominance*

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart v. Dryvit Systems, Inc.,* 255 F.3d 138, 142 (4th Cir. 2001) (quoting *Amchem Prod., Inc.*, 521 U.S. at 623); *Gariety,* 368 F.3d at 362.

The common questions outlined above are broad and apply equally to all class members, and are readily capable of determination on a classwide basis.

2. *Superiority*

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When determining whether a class action is superior, the Court should consider the following factors:

> (A) The interest of members of the class in individually controlling prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.[1]

*Jeffreys*, 212 F.R.D. at 323; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D).

---

[1] Because this is a settlement class, there is no concern with manageability of the case. *See Amchem Prods., Inc.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

"In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." Advisory Committee's Note to 1996 Amendment to Rule 23. In other words, a class action is superior when potential damages may be too insignificant to provide class members with incentive to pursue a claim individually. Thus, the class mechanism permits a large group of claimants to have their claims adjudicated in a single lawsuit. The same is true here, where statutory damages for each Class Member (ranging between $100.00 and $1,000.00, as set forth in 15 U.S.C. § 1681n) are small, providing little incentive for individual litigation of the Class. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

The class action procedure is the superior method for dispute resolution in this matter as the alternative mechanism, permitting individual lawsuits for statutory damages, would be costly and duplicative. Through the class action procedure, these common claims can be brought in one proceeding, preserving limited judicial resources and eliminating unnecessary duplication and potentially divergent judicial decisions.

### C. Class Counsel are Qualified to Represent the Class

Rule 23(g) requires that a court certifying a class also appoint class counsel. It directs a court to consider several factors, including

> [t]he work counsel has done in identifying or investigating potential claims in the action; [c]ounsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [c]ounsel's knowledge of the applicable law; and [t]he resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i).

Here, Class Counsel has handled numerous FCRA class actions, typically as lead or colead counsel. *Soutter v. Equifax Info. Servs., LLC*, No. 3:10-cv-107, 2011 WL 1226025, at *10 (E.D. Va. Mar. 30, 2011), *rev'd on other grounds*, 498 F. App'x 260 (4th Cir. 2012) (stating "the Court finds that Soutter's Counsel [Leonard A. Bennett] is qualified, experienced, and able to conduct this litigation"); *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-cv-423, 2008 U.S. Dist. LEXIS 103534, at *11 (S.D.W. Va. Dec. 19, 2008) (recognizing that Plaintiff's counsel, Bailey & Glasser, particularly John W. Barrett, is "skilled and experienced in class action litigation, and [has] served as class counsel in several cases[.]"). Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases.

## V. Conclusion

In accordance with the above, the Court GRATNS all portions of Plaintiff's Unopposed Motion (ECF NO. 54) and hereby **ORDERS** as follows:

1. The proposed settlement is preliminarily approved, including the appointment of Class Counsel;

2. The following class is conditionally certified, for settlement purposes only:

    All natural persons residing in the United States who applied for employment with ResCare during the Class Period and about whom ResCare procured a Consumer Report and as a result of ResCare procuring a Consumer Report, were denied employment based in whole or in part on the contents of the Consumer Report and to whom either a copy of the Consumer Report or a copy of the Summary of Rights was not provided.

3. Epperly Re:Solutions shall serve as settlement administrator;

4. The parties' proposed mailed notice is approved;

5. The parties shall comply with their respective obligations pursuant to the Settlement Agreement, and

6. The parties shall adhere to the following deadlines:

   a. Class Notice Mailed within 60 days of this order
   b. Submission of Claims/Opt-outs within 120 Days of this Order
   c. Objections Date within 120 Days of this Order
   d. Final Approval Submissions within 150 Days of this Order
   e. Final Approval Hearing: [at least 180 days after Preliminary Approval]

The Court will schedule a final approval hearing after the final approval submissions due date.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 3, 2015

_____
ROBERT C. CHAMBERS, CHIEF JUDGE