## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

JASON SMITH on behalf of himself and
all other Similarly situated,

                Plaintiffs,

v.                              CIVIL ACTION NO.  3:13-5211

RES-CARE, INC., a Kentucky corporation,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending is Plaintiff's Motion for Final Approval of Settlement, Attorney Fees and Costs, and Service Award, ECF No. 61. A final settlement approval hearing was held on September 14, 2015. At the hearing, the Court **GRANTED** the Motion in its entirety and now issues this Opinion and Order explaining the ruling. Specifically, the Court finds the Class received notice in compliance with Federal Rule of Civil Procedure 23(c)(2)(B), approves the parties' settlement as fair, reasonable, and adequate under Federal Rule 23(e), grants the Class Representative, Jason Smith ("Mr. Smith"), a personal service award of $7,500, and grants Class Counsel thirty-three percent (33%) of the common fund for attorney's fees and costs, which totals $280,000.

### I. Facts

#### A. Background

This is an action alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A). Plaintiffs are consumers residing in the United States who applied for positions with Defendant, ResCare, Inc. ("ResCare") and whose consumer reports were obtained by ResCare

to determine employability.[1] The Complaint was filed on March 15, 2013. *Compl.* (Mar. 15, 2013), ECF No. 1. Counts I and II of the Complaint were dismissed with prejudice by stipulation of the parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 25. The Complaint's remaining claims are centered on ResCare's alleged failure to provide disclosures required under the FCRA when denying employment based on the results of credit reports. *See Compl.* at 7. ResCare has denied all claims against it and further denies any wrongdoing and liability to any Class Members in any amount.

Prior to the instant action, Class Counsel engaged in another FCRA class action against ResCare—that one filed in the Western District of Kentucky. *See Ross v. ResCare, Inc.*, No. 11-83, 2012 WL 3096093 (W.D.Ky. July 30, 2012) [hereinafter *Ross*]. *Ross* involved the same class claims involving the procurement and use of consumer report for employment purposes without disclosure. *See id.* at 1–2. In *Ross*, the Parties engaged in significant pre-trial discovery and litigation, including the review of thousands of pages of documents, contentious depositions and full briefing on summary judgment. *Pl.'s Mem. in Supp. of Final Approval of Settlement, Att'y's Fees and Costs, and Service Award* 2, ECF No. 62 [hereinafter *Mem. in Supp. of Final Approval of Settlement*]. Eventually, *Ross* was voluntarily dismissed, and Smith filed the instant action. *Id.*

In the midst of discovery in this case, the Parties agreed to mediate. *See Second Amended Notice of Mediation* (Feb. 19, 2014), ECF No. 38. In March, 2014, the Parties retained the Honorable C. Cleveland Gambill (Ret.) to facilitate a private mediation in Louisville, Kentucky that involved arm's-length, contentious, lengthy, and complicated negotiations. *See Mem. in Supp.*

---

[1] All defined terms have the same meanings as in the *Stipulation of Settlement*, ECF No. 53.

*of Final Approval of Settlement* at 2. As a result of mediation, the parties agreed on a proposed settlement. *Id.*

By Order dated February 2, 2015, the Court granted preliminary approval of the proposed settlement agreement, conditionally certified the Class for purposes of settlement, and approved the proposed mail notice to Class Members. *See* Mem. Op. and Order 1–2 (Feb. 2, 2015), ECF No. 56. The settlement terms and Court-approved notice scheme are explained next.

**B. Settlement Terms**

   *1. The Class*

For settlement purposes, the Court conditionally approved the following class definition:

> All natural persons residing in the United States who applied for employment with ResCare during the Class Period and about whom ResCare procured a Consumer Report and as a result of ResCare procuring a Consumer Report, were denied employment based in whole or in part on the contents of the Consumer Report and to whom either a copy of the Consumer Report or a copy of the Summary of Rights was not provided.

   *2. Consideration to Class Members, Personal Service Award, and Attorney's Fees and Costs*

The proposed settlement agreement provides an $840,000.00 all-cash damages common fund ("common fund") to approximately 4,500 Class Members. *Stipulation of Settlement* at 9 (Nov 24, 2014), ECF No. 53. In addition to damages for the class, the common fund will also cover the cost of notice and administration, attorney fees and costs, and a service award. *Id.*; *Mem. in Supp. of Final Approval of Settlement* at 3. Following entry of this Order, the Class Members who timely filed a claim form will receive a pro rata sum calculated after a deduction from the common fund has been made for the payment of attorney's fees and costs (proposed at $280,000), the cost of notice and administration of the settlement, and a service award to the Class Representative

(proposed at $7,500). Based on Class Counsel's representations, if the settlement is given final approval, each Class Member who submitted a claim will receive a payment of over $500.00, which is more than five times the FCRA's statutory minimum and half of the statutory maximum. *See* 15 U.S.C. § 1681n(a)(1)(A). In accordance with this Court's Memorandum Opinion and Order entered February 3, 2015, ECF No. 56, ResCare deposited $840,000.00 into the common fund.

  *3. Release*

  The settlement also provides that Class Members who have not opted out of the settlement will release ResCare and related persons from all claims resulting from or arising under the FCRA or any similar or comparable state or local laws. *Stipulation of Settlement* at 10–11.

**C. Notice and Class Member Response**

  The notice scheme approved by this Court in its February 2, 2015 order was designed to reach identified Class Members through First-Class mail. Mem. Op. and Order 4 (Feb. 3, 2015), ECF No. 56. First, the Settlement Administrator, Epperly Re:Solutions, researched and updated Class Members' mailing addresses[2] using TransUnion TLQ, a subscription-based information resource firm. *See Aff. of David W. Epperly* 2, ECF No. 61, exh. 1 [hereinafter *Settlement Administrator Aff.*]. Second, the Settlement Administrator attempted to mail notice to Class Members in several rounds of mailing and re-mailing the approved notice package.[3] In the end, the Settlement Administrator estimates a 92.13% effective delivery rate for actual notice provided. *Id.* at 3; *Mem. in Supp. of Final Approval of Settlement* at 4.

---

  [2] ResCare, as well as a third-party consumer-reporting agency, HireRight Solutions, Inc., provided the names and addresses for the notices.

  [3] On May 4, 2015, the Class Administrator sent 4,502 notices by first-class U.S. Mail. Of the mailed notices, 1,595 (relative to 1,198 class members) were undeliverable. Subsequently, 844 notices were re-mailed using updated addresses. In the end, 354 notices were returned with no forwarding addresses, thus these Class Members did not receive notice by mail.

The mailed notice contained information about the nature of the action, the definition of the Class, the Class's claims against ResCare, the settlement's terms, how Class Members could receive settlement payment, how to opt out of the settlement, how to object to the settlement, the details of the then-upcoming fairness hearing, the binding effect of the judgment on Class Members, and other pertinent information. *See Stipulation of Settlement,* Exh. A, *approved* by, Mem. Op. and Order 4 (Feb. 3, 2015), ECF No. 56.

In addition to the mailed notices, the Class Administrator also established a toll-free phone number for Class Member inquiries, and a class action website, www.rescareclassaction.com. *Settlement Administrator Aff.* at 5. The class action website permitted Class Members access to the Court-approved notice, exclusion form, relevant updates about the case and upcoming litigation-related deadlines, proposed settlement agreement, preliminary approval order, and contact information for Class Counsel and the Class Administrator. *Mem. in Supp. of Final Approval of Settlement* at 5.

In order to receive an award under the settlement agreement, Class Members were required to file a claim form with the Settlement Administrator. *Settlement Administrator Aff.* at 4. Claim forms, attached to the mailed notice and available online, explained how to fill out the form and that the form had to be returned by a certain deadline depending on the method of submission.[4] *Stipulation of Settlement*, Exh. A, ECF No. 53–1.

The proposed settlement agreement did not engender any objections, and only one Class Member opted out. *Settlement Administrator Aff.* at 3; *Mem. in Supp. of Final Approval of*

---

[4] Claim forms were due to the Settlement Administrator by 11:59pm on July 3, 2015; online submissions had to be filed by that time and mailed claims forms had to be postmarked on or before July 3, 2015. *Id.*

*Settlement* at 3, 6. In response to notice provided, 1,003 valid claims were filed. *Mem. in Supp. of Final Approval of Settlement* at 6.

### D.  Motion for Final Approval of Settlement and Fairness Hearing

On August 3, 2015, Plaintiff moved for final approval of the settlement, attorney's fees and costs, and a service award for the class representative, ECF No. 61. [5]

On September 14, 2015, pursuant to Federal Rule 23(e)(2), this Court held a fairness hearing. At the fairness hearing the Court questioned the parties about notice actually provided to Class Members, the claims process, adequacy of settlement, the class representative's contributions to this action and entitlement to a service award, and Class Counsel's experience with class actions and requested attorney's fees and costs. No objectors appeared at the fairness hearing. Before concluding the hearing, the Court found notice actually provided was reasonable under Federal Rule 23(c) and the proposed settlement agreement is fair, reasonable, and adequate under 23(e). Therefore, the Court orally granted final approval of the notice and settlement agreement, including Class Counsel's requested $7,500 personal service award for the Class Representative and attorney's fees and costs in the amount of 33% of the common fund, which totals $280,000. The discussion below clarifies the basis for the Court's findings and decision at the fairness hearing.

## II. Discussion

### A.     Legal Standard

Federal Rule of Civil Procedure 23(e) provides that a class action shall not be dismissed without the approval of the court. Fed. R. Civ. P. 23(e). Rule 23(e)'s primary concern is protection

---

[5]  While still denying any wrongdoing, ResCare has agreed to the Plaintiff's Motion.

of class members whose rights may not have been adequately considered during settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991). Approval of class action settlements is committed to "the sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).

If a proposed settlement will bind class members, as it will here, Rule 23(e)(1) states the court may approve the settlement proposal "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Courts generally follow a two-step procedure for approving class action settlements that will bind absent class members. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F.Supp. 825, 827 (E.D.N.C. 1994). First, the Court preliminarily reviews the proposed settlement to determine if it "'is within the range of possible approval, or in other words, whether there is probable cause to notify the class of the proposed settlement." *Id.* (citations and internal quotations omitted). Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). *Id.* (citations omitted). Before granting final settlement approval, the court must also determine that class members were given reasonable notice of the settlement. *See Domonoske v. Bank of America*, 790 F.Supp.2d 466, 472 (W.D. Va. 2011) (citation omitted).

Here, in ruling on the Plaintiff's uncontested motion for final settlement approval, the Court must first determine whether the settlement notice actually provided to class members satisfies due process and Rule 23(c)(2)(B). Second, the Court must determine whether the settlement agreement complies with the fair, reasonable, and adequate requirement of 23(e). After undertaking these

inquiries, the Court finds the Class Members were provided adequate notice of the settlement and the settlement is fair and adequate within the meaning of 23(e).

**B.      Notice Provided Satisfies Due Process and Rule 23(c)(2)(B)**

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" *Kay Co. v. Equitable Prod. Co.*, No. 06-00612, 2010 WL 1734869, at *3 (S.D. W. Va. Apr. 28, 2010) (quoting *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005)). In *Phillips Petroleum Co. v. Shutts*, the Supreme Court held that due process is satisfied "where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to opt out[.]" 472 U.S. 797, 812 (1985) (internal quotations and citations omitted). Rule 23(c)(2)(B), which applies to this class certified under 23(b)(3), requires that class members receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further provides:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

In the instant case, the due process requirements of the Fifth Amendment are satisfied because Class Members received reasonable notice and an opportunity to be heard and withdraw from the Class. Overall, the Class Administrator reports a 92.13% effective delivery rate to

-8-

identified Class Members, which is an acceptable, and even exceptional, rate. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members). The mailed notice informed Class Members of the nature of the action, proposed settlement terms, how to file a claim under the settlement, how to opt out of the Class and the deadline for opting out, how to object to the settlement, and the Court's fairness hearing. The class action website, which the mailed notice referenced, contained copies of the court-approved mailed notice, exclusion form, relevant updates about the case and upcoming litigation-related deadlines, proposed settlement, the Court's preliminary settlement approval order, and contact information for Class Counsel and the Class Administrator. The toll-free phone line provided an opportunity for Class Members to ask questions of Class Counsel and the Class Administrator. As for an opportunity to be heard, Class Members were informed by the mailed notice and website of their opportunity to object to the settlement agreement. Class Members were also given notice of the fairness hearing, which would have afforded those who attended an opportunity to present testimony, if any had attended. Thus, the Court finds due process is satisfied because Class Members received fully descriptive notice sent by first-class mail to each identified class member, with an explanation of their right to opt out.

Additionally, Rule 23(c)(2)(B) is satisfied in this case. First, ResCare identified 4, 554 individuals who met the definition of the conditionally certified class, and it provided the Settlement Administrator with the names and addresses of those individuals. *Settlement Administrator Aff.* at 1. The effort to identify class members was reasonable because ResCare used internal documents and resources within its possession to determine who fell within the scope of the Class. *Id.* After receiving addresses and names of identified class members, the Settlement

Administrator sent the court-approved notice by First-Class mail to the identified Class Members. *Id.* at 2. The notice clearly and concisely stated in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See Stipulation of Settlement,* Exh. A, at 1, 3–8, *approved* by, Mem. Op. and Order 4 (Feb. 3, 2015), ECF No. 56. Thus, Class Members received the best notice practicable under the circumstances, including individual notice to all members who could be identified, and the notice included the language required by Rule 23(c)(2)(B).

The Court finds the notice provided in this case satisfies the requirements of due process and Rule 23(c)(2)(B).

**C.     The Settlement Agreement is Fair, Reasonable, and Adequate under 23(e)**

The Fourth Circuit requires a two-step process for evaluating a class action settlement's compliance with 23(e)'s fair, reasonable, and adequate requirement: first, courts must consider factors bearing upon the settlement's fairness, then factors relating to its adequacy. *See Kay Co.*, 2010 WL 1734869, at *6 (citations omitted); *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F.Supp. 499, 501 (E.D.Va.1995); *see also Domonoske*, 790 F.Supp.2d at 472. After considering the fairness factors and adequacy factors below, the Court finds both sets support final approval of the settlement agreement.

As an initial matter, the Court notes that the concern for the interests of absent class members is substantially ameliorated in this case by the high percentage of known class members

-10-

who received actual notice. *See Groves v Roy G. Hildreth and Son, Inc.*, No. 08–000820, 2011 WL 4382708 (S.D. W. Va. 2011). The Settlement Administrator successfully sent individual notice by First-Class mail to over 92 percent of the approximately 4,500 member class. *Settlement Administrator Aff.* at 2–3. Therefore, all but about 8% of the Class has received individual notice of the terms of the settlement; based on that notice, 1,003 members filed claims, and only one opted out. The completion rate for actual notice provided, along with Class Members' claims filed and lack of objections, leans toward finding the settlement fair, reasonable, and adequate.

### 1.   Fairness

In determining whether a settlement is *fair*, the Court should ask if the proposed settlement "was reached as a result of good-faith bargaining at arms-length, without collusion," *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159, and to make this determination, the Court must consider the following factors:

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [] class action litigation.

*Scardelletti v. Debarr,* 43 F. App'x 525, 528 (4th Cir. 2002) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158–59). Here, *Jiffy Lube's* fairness factors weigh in favor of finding the settlement is the result of good-faith bargaining at arm's length, and not the result of collusion.

Under factor one, the posture of this case indicates the parties did not settle prematurely. *See Domonoske*, 790 F. Supp. 2d at 473 (observing the first factor requires that courts consider how far the case has come from its inception; settlement in an immature case points toward collusion, while settlement in a mature case points away from collusion). Notable here, a sister-class action, *Ross*, was brought and settled prior to this action, indicating that much of the work

-11-

that transpired in the *Ross* litigation was directly transferrable to this class action. *Mem. in Supp. of Final Approval of Settlement* at 2. Furthermore, while the Class Representative, Mr. Smith, was prepared to seek class certification for purposes other than settlement, ResCare was prepared to not only oppose certification, but also to seek summary judgment. *Id.* at 11. Even still, this case was not brought and settled immediately; it settled during discovery and only after the parties conducted a full-day mediation specific to this case. *Id.* at 2, 10. Because many cases settle after mediation, which is the very purpose of mediation—a dispute resolution alternative to trial, this case was not prematurely settled. For these reasons, the Court concludes the posture of this case indicates that settlement was not the result of collusion and that it therefore is fair.

Under factor two, the Court finds that discovery in this case, coupled with discovery in the sister-class action *Ross*, was adequate to develop the record and appraise the parties of the strengths and weaknesses of their own and their adversaries' claims and defenses. In this class action, the parties agreed to settle only after conducting extensive discovery, both formally and informally. *Mem. in Supp. of Final Approval of Settlement* at 10. Additionally, much of the discovery relevant to this case was first adduced during the *Ross* litigation. *Id.* at 2, 10. Hence, the Court finds the extent of discovery in this case weighs in favor of finding the settlement is fair.

Under factors three and four, the Court finds that the parties engaged in arm's length settlement negotiations, and that Class Counsel possessed significant past experience in consumer class action litigation. The Parties engaged in substantial settlement negotiations leading up to and through a full day of mediation facilitated by a private mediator. *Id.* at 10. Additionally, at least one of the attorneys representing the Class previously litigated numerous consumer class actions and was found adequate in each one. *See Decl. of Matthew A. Dooley* 3, ECF No. 61, exh. 2. Hence,

-12-

the Class Members were represented by experienced counsel capable of evaluating the relative strength of the parties' claims and defenses. On this basis, the Court finds the final two fairness factors weigh in favor of approving the settlement.

Each of *Jiffy Lube's* fairness factors weighs in favor of finding the settlement was reached without collusion as a result of good-faith bargaining at arm's length. *See Jiffy Lube*, 927 F.2d at 159. Accordingly, the Court finds the settlement is fair within the meaning of Rule 23(e).

### 2.  Adequacy

In determining whether a settlement is *adequate*, the Court should consider:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Scardelletti,* 43 F. App'x 525, 528 (4th Cir. 2002) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158–59). Here, *Jiffy Lube*'s adequacy factors weigh in favor of finding the settlement is adequate under 23(e).

Under adequacy factors one through three, the Plaintiff's case is strong on the merits, but, as Plaintiff admits, not without weak spots. The Class has at all times maintained that its case is strong because it is supported by documentary evidence and deposition testimony. The Class would have faced a challenge, however, because its claim required proof of *willful* noncompliance with the FCRA, a difficult hurdle indeed. ResCare has at all times maintained that it was FCRA compliant, and if it was shown to be non-compliant, ResCare may have been able rebut any argument that it was willfully so. For both sides, this battle back and forth likely would have required a host of depositions and significant document production and review; it almost certainly would have required a lengthy trial where the Class and ResCare would have had to show and

-13-

rebut evidence on the fact-issue of willfulness. Thus, without settlement, the parties would have proceeded with a long, expensive litigation process, culminating in a trial, likely followed by an appeal. There is no certainty for either party that it would have prevailed in litigation or on appeal. In fair consideration of the strengths and weaknesses of its side, Class Counsel decided that settlement was appropriate because, as the old adage puts it, "a bird in hand is worth two in the bush." *See Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85-3048, 1987 WL 7030, at *2 (S.D.N.Y. Feb. 13, 1987). Hence, the first three factors weigh in favor of finding the settlement agreement is adequate. *See Domonske*, 790 F.Supp.2d at 474.

Factor four, which weighs slightly against finding the agreement adequate, is less material to this case than the other factors. In the case where a judgment against the defendant would bankrupt the defendant, that threatened insolvency may make settlement more appealing to the plaintiff than obtaining a judgment that is partially or wholly unrecoverable due to bankruptcy. In this case, ResCare's solvency has not been a concern during this litigation, which might seem to indicate that the Class should have pursued judgment against ResCare, instead of settling, in order to obtain something closer to the maximum amount of damages recoverable under the FCRA. However, based on the range of damages recoverable under the FCRA, the settlement already provides for a significantly high amount of damages to Class Members. Per representation of the parties, the settlement provides for a $500 award to Class Members based on distributing pro rata shares of the common fund to Class Members who filed claims; this pay-out amounts to roughly five times the FCRA statutory minimum of $100 and half of the statutory maximum of $1,000. 15 U.S.C. § 1681n(a)(1)(A). Hence, Class Members did not suffer any significant loss of possible recovery under the FCRA, since Members settled for well-above the statutory minimum and half-

-14-

way to the statutory maximum. Thus, ResCare's solvency is not material to settlement in this action because, based on the amount recoverable under the FCRA, each Class Member will receive a generous recovery under the settlement agreement. To the extent that Factor Four is relevant in this litigation at all, it weighs against finding the agreement adequate, but only slightly so because of the already generous recovery promised to Class Members under the settlement.

Factor five weighs in favor of finding the settlement is adequate. There was not one single objection, despite over 1,000 claims filed and a roughly 92% effective notice rate to about 4,500 Class Members. As such, this Court can infer that there was no opposition to the settlement agreement. For that reason, the Court finds factor five leans toward finding the settlement is adequate.

Four of the five adequacy factors weigh in favor of the settlement. The only factor that arguably weighs against settlement is less material to this action than the other factors. Accordingly, the Court finds the settlement is adequate under Rule 23(e).

For the foregoing reasons, the Court finds the settlement is fair and adequate, as required by Rule 23(e), and therefore, grants the portion of Plaintiff's unopposed Motion seeking final settlement approval. ECF No. 61.

### III. Attorney's Fees and Personal Service Award

The Class has also moved for an award of thirty three percent (33%) of the common fund for attorney's fees and costs, which amounts to $280,000, and a $7,500 personal service award to Mr. Smith for his role as Class Representative, also to be paid out of the common fund. The Parties agree these sums are fair and reasonable, and no Class Members have objected to these sums. As

explained below, the Court grants the Class's motion and grants attorney's fees and costs and a personal service award, as requested.

### A. Attorney's Fees and Costs

For attorney's fees and costs, Class Counsel has requested 33% of the common fund, which totals $280,000. As explained below, the Court approves the requested attorney's fees and costs because they are reasonable compensation under the percentage of the common fund method, as cross-checked by the lodestar method.

When a class settlement results in a common fund for the benefit of class members, reasonable attorney's fees may be awarded from the common fund. Fed. R. Civ. P. 23(h) (authorizing reasonable attorney's fees in class actions); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Fourth Circuit has yet to announce its preferred method for determining the reasonableness of attorney's fees in common fund class actions, hence the appropriate method lies within this Court's discretion. *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 463 (S.D. W. Va. 2010). Courts have increasingly employed the "percentage of fund" method for determining attorney's fees in common fund cases. *Id.* at 462. To assure the fee determined by the percentage of fund method is reasonable in a given case, it is wise to incorporate a "lodestar cross-check." *Id.* at 463 (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 191, among other citations omitted here). Lastly, costs that are reasonable in nature and amount may be reimbursed from the common fund. *Id.* at 471.

The percentage of fund method operates similarly to a contingency fee arrangement: the court awards attorney's fees based on a percent of the total gross common fund obtained for the

class.[6] *Id.* at 462. In this case, Class Counsel seeks 33% of the common fund as payment for attorney's fees and costs. The Court finds 33% is a reasonable amount of the common fund under the percentage of common fund method. *See Deem v. Ames True Temper, Inc*., No. 10-01339, 2013 WL 2285972, at *5 (S.D. W. Va. May 23, 2013) (citing *Eriksen Const. Co., Inc. v. Morey*, 923 F.Supp. 878, 881 (S.D.W.Va.1996)).

Courts have found certain factors helpful in analyzing the reasonableness of fees determined by the percentage of fund method. These factors include:

> (1) the size of the fund created and the number of persons benefited;
> (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001). After reviewing these factors, it is evident the fee determined by the percentage of fund method is reasonable in this case.

The 33% of the common fund requested for attorney's fees and costs is reasonable compensation given the size of the fund, tacit approval of Class Members, and Class Counsel's work in this class action. First, this is not a case where the sheer settlement size ($840,000) or number of class members (roughly 4,500) is such that the proposed 33% of the common fund for attorney's fees does not reflect the skill, efficiency, and hard-work of counsel. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 736 (explaining how percentage of fund fees should be reduced in cases with larger class sizes or settlement funds, e.g., funds exceeding millions of dollars).

---

[6] Unlike a contingency fee arrangement, which is determined at the beginning of an attorney client relationship, the percentage fee under the percentage o0f fund method is determined at the end of litigation. *Kay Co.*, 749 F. Supp. 2d at 462.

-17-

Second, almost all of the 4,500 Class Members (92%) received actual notice of the settlement terms, including the proposed attorney's fees and costs, and not one raised any objection to any of the settlement's terms. The Class Members' silence is tacit approval of the attorney's fees and costs term. *See Kay Co.*, 749 F. Supp. 2d at 468; *Groves*, 2011 WL 4382708, at *6. Third, Class Counsel consisted of attorneys experienced in litigation, *see infra* Part II.C.1 (discussing attorney experience), who shouldered the entire risk of the litigation, spent significant time investigating the case prior to filing, conducted discovery specific to this class action, and engaged in extensive negotiations on behalf of the Class. At the same time, Class Counsel resolved the litigation by settlement at the earliest opportunity, thus procuring efficient settlement of the case without over-litigating. Lastly, Class Counsel obtained awards of $500 for the Class Members who filed claims, which amounts to five times the statutory minimum and half of the statutory maximum. An award for individual Class Members that is five times the statutory minimum and half of the statutory maximum is an excellent settlement for class members who did not have to participate in any litigation, only had to file a claim form, and whose rights would otherwise not have been vindicated. Moreover, the 33% requested would also cover the costs Class Counsel incurred, in addition to covering attorney's fees.

The lodestar cross-check confirms that 33% of the common fund is a reasonable fee for Class Counsel's work and expenses incurred in litigating this case. Class Counsel has provided the following estimate of their billable time:

| Law Firm | Attorney Hours |
|---|---|
| Consumer Litigation Associates, P.C. | 77.00 |
| O'Toole McLaughlin Dooley & Pecora | 753.77 |

-18-

Bailey & Glasser, LLP                            138.00

Based on these hours, Class Counsel estimates its total hourly fee for all attorneys and paralegals in this case would be a lodestar of $239,772.00. Additionally Class Counsel estimates the expenses incurred total $7,430.75. Together, the billable hours and expenses equal $247,202.50. This produces a lodestar multiplier of 1.15, which is well within the normal range of lodestar multipliers. *Jones v. Dominion Resources Services, Inc.*, 601 F.Supp.2d 756, 766 (S.D. W. Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee.") (citations omitted); *see also Domonoske*, 790 F. Supp. 2d at 476.

After applying the percentage of common fund method and using a lodestar cross-check, the Court finds 33% of the common fund, which amounts to $280,000, is reasonable compensation for attorney's fees and costs in this class action. As such, the Court grants Class Counsel attorney's fees and costs in the amount of $280,000 to be paid out of the common fund.

### B. Personal Service Award

Mr. Smith has requested a personal service award of $7,500 for his work as the class representative. As explained below, the Court approves the requested personal service award.

Personal service awards, sometimes called incentive awards, "are routinely approved in class actions to encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Helmick v. Columbia Gas Transmission*, No. 07-00743, 2010 WL 2671506, at *3 (S.D. W. Va. July 1, 2010) (citing *Jones*, 601 F. Supp. 2d at 767) (citations and internal quotations omitted). In determining personal

-19-

service awards, courts consider, among other things, the Class Representative's contribution to the class action, including assistance with investigating claims, negotiating, responding to discovery, attending meetings, and coordinating and communicating with Class Counsel on behalf of the class. *See id.* (illustrating *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 400 (D.D.C.2002)).

In this case, the requested personal service award is appropriate in light of Class Members' tacit approval of the personal service award and Mr. Smith's contributions to and sacrifices for this class action. The Class Notice advised Class Members that up to $7,500 would be requested for a personal service award, and not one person objected. Their silence indicates Class Members' tacit approval of the personal service award. *See Kay Co.*, 749 F. Supp. 2d at 468; *Groves*, 2011 WL 4382708, at *6. Additionally, Class Counsel reported that Mr. Smith not only initiated this class action but also took an active role in it; he participated in the crafting of the pleadings, assisted with discovery, and was responsive to Class Counsel throughout the litigation. Before the Class was conditionally certified for settlement, Mr. Smith rejected a substantial offer of judgment, which, had he accepted, would have left the Class empty handed. Mem. Op. and Order 2 (Feb. 2, 2015), ECF No. 56. Rejecting the offer of judgment was a risk Mr. Smith took on behalf of the Class.

In light of personal service awards granted in the past within this district and this Circuit,[7]

---

[7] *Kay Co.*, 749 F. Supp. 2d at 468 (granting $15,000 personal service award for initiating suit and providing and analyzing records during discovery); *Domonoske*, 790 F.Supp.2d at 476–77 (granting $5,000 personal service award in FCRA class action); *Deem*, 2013 WL 2285972, at *7 (granting $7,500 personal service award for Class Representative's initiation of suit, interest and engagement in suit, availability to class counsel, and having involvement in action that exceeding expectations of class counsel); *Helmick*, 2010 WL 2671506, at *3 (granting $50,000 personal service award out of $450,000 settlement).

the Court finds the requested $7,500 personal service award is fair and appropriate based on Class Members' tacit approval of the proposed personal service award and Mr. Smith's contributions to and sacrifices for this class action. The Court grants Mr. Smith a personal service award of $7,500 to be paid out of the common fund.

### IV. Conclusion

For the above-stated reasons, the Court has **GRANTED** Plaintiff's Motion for Final Approval of Settlement, Attorney Fees and Costs, and Service Award, ECF No. 61. The Court **ORDERS** as follows:

1. The Settlement Agreement is finally approved;

2. Class Counsel is awarded attorney's fees and costs in the amount of $280,000; and

3. The Class Representative, Jason Smith, is awarded $7,500.00 for his service to the class.

This action is **DISMISSED WITH PREJUDICE**, but the Court retains jurisdiction to enforce the settlement. The Court **ORDERS** the parties to submit a report concerning the disbursement of the common fund within thirty (30) days of the entry of this Opinion and Order.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:       October 27, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE

-21-